United States District Court
Southern District of Texas
**ENTERED**
July 28, 2026
Nathan Ochsner, Clerk

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| Nadia Jillani, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | Civil No. 4:26-cv-4550 |
| | § | |
| Todd Blanche, *et al.*, | §` | |
| | § | |
| Respondents. | § | |

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

Before the Court are Nadia Jillani's Petition for a Writ of *Habeas Corpus*, Doc. 1, and Respondents' Motion for Summary Judgment, Doc. 7, to which Petitioner has responded in opposition, Doc. 8. For the reasons set forth below, Respondents' Motion for Summary Judgment is GRANTED, and the Petition is DENIED. Petitioner's claim for habeas relief under the Fifth Amendment's Due Process Clause is premature and therefore must be DISMISSED WITHOUT PREJUDICE and may be re-asserted once Petitioner's current period of detention has exceeded six months. In all other respects, the Petition is DISMISSED WITH PREJUDICE.

## I. BACKGROUND

Petitioner Nadia Jillani is a citizen of Pakistan who unlawfully entered the United States near El Paso, Texas, in 1987. Docs. 1 ¶¶ 32–33, 7 at 2. Nine years later, Petitioner was convicted of aggravated theft. Docs. 1 ¶ 36, 7 at 2, 7-2 at 1–2. After serving her criminal sentence, Petitioner was transferred to immigration custody and subsequently removed to Pakistan. Docs. 1 ¶ 39, 7 at 2, 7-2 at 7–12.

After her removal, Petitioner's family applied for immigration benefits on her behalf by using her birth name (Sania Khalil) and not disclosing her prior immigration and criminal history. Docs. 1 ¶¶ 34 & 40, 7 at 3, 7-2 at 16. Based in part on these omissions, Petitioner was admitted to the United States as a Lawful Permanent Resident. Doc. 1 ¶ 43. However, in April 2005, when Petitioner presented her Lawful Permanent Resistant Card to a U.S. Border Patrol Agent at an immigration checkpoint, the agent conducted a records check, discovered Petitioner's prior immigration history, and took her into custody based on his findings. Docs. 1 ¶¶ 45–47, 7 at 3, 7-2 at 14–18.

Petitioner was subsequently placed in removal proceedings and ordered removed from the United States on March 9, 2006. Docs. 1 ¶¶ 48–49, 7 at 3, 7-2 at 25–26 & 31–32. During the next nine months that she remained in immigration custody, the Department of Homeland Security ("DHS") was unable to effectuate her removal. Docs. 1 ¶¶ 50–56, 7 at 3, 7-2 at 36–45. Petitioner was therefore released on bond and under an order of supervision (the "OSUP") in December 2006. *Id.*

Nearly twenty years later, Petitioner was re-detained. Docs. 1 ¶ 60, 7 at 3, 7-2 at 47. Since June 3, 2026, she has remained in the custody of Respondent, Warden of the Houston Contract Detention Facility, in Houston, Texas. Doc. 1 ¶ 63. Petitioner now seeks a writ of *habeas corpus* under 28 U.S.C. § 2241 on the grounds that her present detention violates

(i) due process; (ii) the Immigration and Nationality Act ("INA"); (iii) the *Accardi*[1] Doctrine; and (iv) the Administrative Procedure Act ("APA"). Doc. 1.

## II. ANALYSIS

Before addressing Petitioner's individual claims, the Court first acknowledges the case's current posture. When a detainee petitions for a writ of *habeas corpus*, 28 U.S.C. § 2243 presents district courts with three options: award the writ, direct the respondent to show cause why the writ should not be granted, or dismiss the petition if "it appears from the application that the applicant or person detained is not entitled thereto." Viewing the Petition's claims as facially deficient, the Court elected to request additional briefing from the parties. Doc. 6. Respondents moved for summary judgment on the grounds that Petitioner's removal to Pakistan is significantly likely to occur in the reasonably foreseeable future—the standard that governs post-removal-order detention that exceeds six months.[2] *See* Doc. 7 at 6; *Zadvydas v. Davis*, 533 U.S. 678, 701 (2001). Petitioner, however, has not been detained beyond the presumptively reasonable six-month period, rendering her due process challenge facially premature. Her remaining challenges similarly do not justify habeas relief. The Court addresses each of Petitioner's arguments in turn.

---

[1] *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954).

[2] The Court is not bound by a party's representation or concession on a question of law. *See, e.g.*, *Orloff v. Willoughby*, 345 U.S. 83, 87 (1953).

**A. Due Process**

Petitioner first claims that her detention violates due process. Doc. 1 ¶¶ 82–86. Specifically, Petitioner contends that her aggregate term of post-removal-order-detention—that is, her current term of custody plus her term some twenty years ago—exceeds the six months of presumptively reasonable post-removal-order detention authorized in *Zadvydas v. Davis*. *Id.* ¶ 86. The Court disagrees.

This Court recently joined several district courts in construing *Zadvydas* as creating a bright-line rule: "Once a removal order becomes administratively final, the government is authorized to detain an alien for six months to facilitate his deportation." *Qambari v. Mullin*, No. 4:26-cv-2547 (S.D. Tex. July 2, 2026), Doc. 12 at 7. Thus, "during this time period, any constitutional challenge to the alien's detention is premature." *Id.*

Here, Petitioner was re-detained on June 3, 2026, so her current custody period has not yet exceeded six months. Docs. 1 ¶ 60. The Court would therefore ordinarily dismiss the Petition as premature. *See, e.g.*, *Qambari*, No. 4:26-cv-2547; *Martinez-Castillo v. Contreras*, No. 4:26-cv-2081 (S.D. Tex. July 14, 2026), Doc. 9.

Petitioner, however, raises a related and unsettled question: Is post-removal-order detention cumulative? In other words, must a removable alien "receive credit" for prior time in immigration custody? If not—meaning each detention period should be assessed independently—then the nine months Petitioner spent in post-removal-order immigration custody in 2006 have no bearing on her current detention. Doc. 1 ¶ 56. Because she has only remained in custody since June 3, her due process challenge must be dismissed as

premature. Docs. 1 ¶ 60; *Qambari*, No. 4:26-cv-2547. But if detention should be aggregated—meaning the Court should add the nine months of detention in 2006 to her current term—then Petitioner's due process challenge turns on *Zadvydas*' burden-shifting inquiry, whether her removal is significantly likely to occur in the reasonably foreseeable future. *Zadvydas*, 533 U.S. at 701.

District courts are sharply divided on the aggregation question. Some courts firmly endorse aggregation. *See, e.g.*, *Phong Thanh Nguyen v. Scott*, 796 F. Supp. 3d 703 (W.D. Wash. Aug. 21, 2025); *Sied v. Nielsen*, 2018 WL 1876907, at *6 (N.D. Cal. Apr. 19, 2018); *Chen v. Holder*, 2015 WL 132366635, at *2 (W.D. La. Nov. 20, 2015). Those courts reason that, were they to review only the current period of confinement, the executive branch could skirt *Zadvydas* and "reset the clock" by periodically releasing and re-detaining aliens subject to final removal orders. *See Herrera v. Tate*, 801 F. Supp. 3d 689, 702 (S.D. Tex. 2025).

Other district courts, in contrast, reject a cumulative approach, noting that if detention time is calculated in the aggregate, even a single day of re-detention could raise constitutional concerns. *See Barrios v. Ripa*, No. 1:25-CV-22644, 2025 WL 2280485, at *8 (S.D. Fla. Aug. 8, 2025); *see also Roe v. Oddo*, No. 3:25-cv-128, 2025 WL 3030692, at *7 n.8 (W.D. Pa. Oct. 30, 2025); *Atunez v. Warden, Baker Corr. Inst.*, No. 3:26-cv-621, 2026 WL 1758304 (M.D. Fla. June 18, 2026); *Meskini v. Att'y Gen. of U.S.*, No. 4:14-CV-42 (CDL), 2018 WL 1321576 (M.D. Ga. Mar. 14, 2018). And despite this disagreement, this Court is unaware of any circuit opinion directly addressing the aggregation question,

an issue arising with increased frequency due to the Trump Administration's commitment to third-country removal.

Before adopting either approach, this Court first addresses three principles that undergird the *Zadvydas* holding. First, the *Zadvydas* Court acknowledged the deference due the federal government on matters of immigration. Specifically, the Court noted that ordinary principles of judicial review in immigration matters "recognize primary Executive Branch responsibility" and that courts "must take appropriate account of the greater immigration-related expertise of the Executive Branch." 533 U.S. at 700. Second, the Court sought "uniform administration in the federal courts" such that "the Nation [would] speak with one voice on immigration." *Id.* at 701. And finally, the Court confronted whether the Constitution could "permit detention that is indefinite and potentially permanent." *Id.* at 696.

These three interrelated (and, at times, conflicting) principles inspired the Court to adopt a rule that would "limit the occasions when courts will need to make" difficult judgments. *Id.* The Court sought an administrable and deferential, yet adequately protective, standard. Thus, the Court held that under 8 U.S.C. § 1231(a)(6), the Attorney General could detain a removable alien for six months after his removal order became final, but beyond six months, removal must be significantly likely to occur in the reasonably foreseeable future. *Id.* at 701.

Guided by these same three principles, this Court joins several district courts in adopting a similarly deferential and administrable rule for detention aggregation. *See, e.g.*,

*Barrios v. Ripa*, 2025 WL 2280485, at *8; *Roe v. Oddo*, 2025 WL 3030692, at *7 n.8. Specifically, the government shall be entitled to a new presumptively reasonable six-month-period to effectuate an alien's removal for each discrete detention. Absent evidence of a deliberate pattern of catch-and-release to elude judicial scrutiny, the Court shall defer to the Executive Branch's expertise and assume that re-detention is part of a genuine and independent effort to effectuate that alien's removal. *See Oro v. Mia. Field Off. Dir.*, No. 2:26-cv-329, 2026 WL 706623, at *3 (M.D. Fla. Mar. 13, 2026). This approach affords due deference to the Executive Branch while simultaneously preventing gamesmanship that would give rise to indefinite detention.

Such an approach also makes logical sense. The purpose of the *Zadyvdas* holding was to prevent unduly long detention where political or legal considerations render deportation infeasible or impossible, such as a nation refusing to accept an individual or class of deportees, a natural disaster in the receiving country, or a hostile or oppressive government in the homeland. Much, however, can change in 20 years' time. Policies evolve, nations rebuild, and regimes rise and fall. The fact that a would-be deportee could not be removed swiftly two decades prior does not mean that they cannot be expeditiously removed today. Nor should this deprive the Executive Branch of the ability to diligently

attempt removal in light of changed circumstances.[3] Six months of prior immigration detention is not a *de facto* green card.

Having adopted the more sensible non-aggregation rule, the Court returns to Petitioner's due process challenge. Petitioner remained in immigration custody for nine months in 2006 before being released on the OSUP. *See* Doc. 1 ¶ 56. But she neither alleges nor adduces any evidence that she was re-detained between 2006 and June 3, 2026. *See generally* Doc. 1. So, for nearly twenty years, she remained subject to a final removal order, but free from immigration custody. *See id.* On these facts, the Court must assume that DHS re-detained Petitioner in June as part of a genuine effort to finally effectuate her removal. Therefore, because her current detention period has not yet exceeded six months, her due process challenge must be dismissed as premature.

**B. Immigration and Nationality Act**

Petitioner next claims that her present detention violates the INA.[4] *See* Doc. 1 ¶¶ 87–91. It does not.

An alien subject to a final order of removal is mandatorily detained for a 90-day "removal period." *See* 8 U.S.C. § 1231(a)(1)(A). Thereafter, the Attorney General has

---

[3] This logic is even more compelling in light of the Administration's implementation of a third-country removal program, which untethers the likelihood and speed of an alien's successful removal from the political vagaries of a single country.

[4] It is unclear whether Petitioner intended to allege separate claims under the INA and its implementing regulations, respectively. *See* Doc. 1. The Court therefore liberally construes the claims as independent, first holding that Petitioner's detention is statutorily permitted under 8 U.S.C. § 1231(a)(6), and then rejecting Petitioner's regulatory challenges as the bases for her *Accardi* Doctrine claim in Section II.C, *infra*.

discretion to continue to detain an alien if he (1) was ordered removed under one of four specified subsections of the INA, or (2) poses "a risk to the community or [is] unlikely to comply with the order of removal." 8 U.S.C. § 1231(a)(6). Among the specified subsections is 8 U.S.C. § 1227(a)(2)(A)(ii), which authorizes the Attorney General to continue to detain aliens ordered removed for committing an aggravated felony.

Here, Petitioner was previously convicted of aggravated theft. *See* Doc. 1 ¶ 36. In fact, she concedes that under 8 U.S.C. § 1231(a)(6), the conviction subjects her to discretionary detention beyond the "removal period." *See id.* ¶ 72. This alone forecloses Petitioner's INA claim. Subject to the constitutional limitations articulated in *Zadvydas*, her continued discretionary is permitted by statute.

**C. *Accardi* Doctrine**

Next, Petitioner claims that her present detention violates the *Accardi* Doctrine because DHS has failed to comply with 8 C.F.R. §§ 241.4 and 241.13. Doc. 1 ¶¶ 87–94. Section 241.4 outlines the general custody-review process that DHS must follow when electing to detain a removable alien beyond the initial 90-day removal period. *See* 8 C.F.R. § 241.4(a). In contrast, Congress enacted Section 241.13 in response to *Zadvydas* to provide alternative custody procedures for re-detention after an alien has provided good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future. *See* 8 C.F.R. § 241.13(a). Because "[t]he *Accardi* doctrine 'stands for the unremarkable proposition that an agency must abide by its own regulations,'" Petitioner's *Accardi* Doctrine claim depends on whether DHS contravened either of these

regulations, and whether those regulations in turn entitle her to habeas relief. *Richardson v. Joslin*, 501 F.3d 415 (5th Cir. 2007) (quoting *Chevron Oil Co. v. Andrus*, 588 F.2d 1383, 1386 (5th Cir. 1979)).

First, Section 241.4 has no bearing on Petitioner's re-detention. The regulation provides that its procedures "do not apply after the Service has made a determination . . . that there is no significant likelihood that an alien under a final order of removal can be removed in the reasonably foreseeable future." 8 C.F.R. § 241.4(b)(4). Instead, once such a determination is made, Section 241.13 governs any subsequent re-detention. *See* 8 C.F.R. § 241.13(b)(1); *Choy v. Woosley*, No. 4:25-cv-197-DJH, 2026 WL 324601, at *5 (W.D. Ky. Feb. 6, 2026); *Nwosu v. Warden, Fla. Soft Side S.*, No. 2:26-cv-183-KCD-DNF, 2026 WL 787632 (M.D. Fla. Mar. 20, 2026).

Here, Petitioner was previously released in 2006 after DHS determined that her removal was not significantly likely to occur in the reasonably foreseeable future. Doc. 7-2 at 36 ("Your removal does not appear reasonably foreseeable at this time. . . . Upon review of your case, ICE has concluded that you will be released from custody, pending your removal, under an Order of Supervision upon the posting of a $1,500 bond." (emphasis omitted)). She now challenges her *re*-detention. *See* Doc. 1. Consequently, Section 241.13, rather than Section 241.4, regulates Petitioner's current custody.

As to Petitioner's Section 241.13 challenge, this Court joins Judge Hendrix's well-reasoned opinion in *Tam Chi Nguyen v. Noem* in characterizing Section 241.13 as "a mere administrative regulation, not required as a result of the Constitution," the violation of

which does not justify issuance of the writ. 797 F. Supp. 3d 651, 664-665 (N.D. Tex. 2025). This Court further concurs with Judge Hendrix's skepticism regarding whether the Court even has jurisdiction to order Respondents to comply with Section 241.13, including providing notice and an informal interview to Petitioner to revoke her OSUP and re-detain her. *See id.* at 665. Simply put, habeas only provides relief from unlawful imprisonment or custody, *see Pierre v. United States*, 525 F.2d 933, 935–36 (5th Cir. 1976). Petitioner has failed to explain how DHS's purported failure to abide by Section 241.13 renders her present detention itself unlawful. *See* Doc. 1. Instead, her allegations of procedural defects do not constitute a constitutional violation that gives rise to habeas belief. *See Tam Chi Nguyen*, 797 F. Supp. at 663–65.

In sum, Petitioner's *Accardi* Doctrine claim must be dismissed because it relies on an inapplicable regulation (8 C.F.R. § 241.4) and alleged regulatory noncompliance that does not rise to a constitutional violation justifying habeas relief (8 C.F.R. § 241.13).

**D. Administrative Procedure Act**

Finally, Petitioner contends that Respondent's decision to re-detain her violates the APA. Doc. 1 ¶¶ 95–98. The Court recently rejected this precise claim, holding that *habeas corpus*, rather than the APA, is the appropriate vehicle to challenge post-removal-order detention. *See Qambari v. Mullin*, No. 4:26-cv-2547, at 4 (S.D. Tex. July 2, 2026) (citing 5 U.S.C. § 704; *Immigr. and Naturalization Serv. v. St. Cyr*, 533 U.S. 289, 305 (2001); *Trump v. J.G.G.*, 604 U.S. 670, 672 (2025)). Petitioner's APA claim therefore must be dismissed.

## III. CONCLUSION

For the reasons set forth above, Respondents' Motion for Summary Judgment is GRANTED, and the Petition is DENIED. Petitioner's claim for habeas relief under the Fifth Amendment's Due Process Clause is premature and therefore must be DISMISSED WITHOUT PREJUDICE to being re-asserted once Petitioner's current period of detention has exceeded six months. In all other respects, the Petition is DISMISSED WITH PREJUDICE. The Clerk of Court is directed to CLOSE this case. A final judgment will be entered separately.

**SO ORDERED.**

**SIGNED** at Houston, Texas, on the 28th of July, 2026.

Nicholas J. Ganjei
United States District Judge